**Appeal No. 15-12821**
_____

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT
_____

### CORNELIUS MAHONE

*Appellant,*

### V.

### CSX TRANSPORTATION, INC.

*Appellee.*

_____

On Appeal from the
United States District Court for the Northern District of Alabama
No. 2:14-cv-00535
The Honorable Abdul Kallon

_____

### BRIEF OF APPELLEE CSX TRANSPORTATION, INC.
_____

Deborah A. Sudbury
  (Georgia Bar No. 000090)
Elaine Rogers Walsh
  (Georgia Bar No. 003480)
Uchenna Ekuma-Nkama
  (Georgia Bar No. 957861)
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-3053
Telephone: (404) 581-3939
Facsimile: (404) 581-8330

*Attorneys for Defendant-Appellee*

Cornelius Mahone v. CSX Transportation, Inc., Appeal No. 15-12821

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Bennitt, Jeffrey (Attorney for Plaintiff – Appellant)

CSX Corporation (Parent Company of Defendant – Appellee)

CSX Transportation, Inc. (Defendant – Appellee)

Ekuma-Nkama, Uchenna (Attorney for Defendant – Appellee)

Kallon, Abdul Karim (U.S. District Judge, Northern District of Alabama)

Mahone, Cornelius (Plaintiff – Appellant)

McCants, Terrell (Attorney for Plaintiff – Appellant)

Sudbury, Deborah (Attorney for Defendant – Appellee)

Walsh, Elaine Rogers (Attorney for Defendant – Appellee)

## STATEMENT REGARDING ORAL ARGUMENT

Defendant – Appellee CSX Transportation, Inc. ("CSXT" or "Appellee") does not request oral argument.  The District Court followed well-settled law from this Circuit to conclude that Plaintiff – Appellant Cornelius Mahone ("Appellant" or "Mahone") failed to establish either a prime facie case of race harassment based on a single meeting in November 2011 – the only claim which Mahone appeals – or, if he could, that CSXT was responsible for any such conduct.  As a result, the District Court's order granting complete summary judgment to CSXT and dismissing Mahone's claims should be affirmed.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS  AND CORPORATE DISCLOSURE STATEMENT ..................................................................i

STATEMENT REGARDING ORAL ARGUMENT ........................................ii

STATEMENT OF JURISDICTION ............................................................... 1

STATEMENT OF THE ISSUE ...................................................................... 2

STATEMENT OF THE CASE ....................................................................... 3

      A.    PROCEDURAL HISTORY ........................................................... 3

      B.    STATEMENT OF THE FACTS.................................................... 3

      1.    CSXT's Policy Statement on Equal Employment Opportunity and CSXT's Code of Ethics ............................................................... 4

      2.    CSXT's Individual Development & Personal Accountability Policy ("IDPAP") ................................................................................... 6

      3.    Ethics Hotline Complaint Against Mahone for Workplace Violence.......... 6

      C.    RULINGS PRESENTED FOR REVIEW................................... 10

ARGUMENT AND CITATION OF AUTHORITY ...................................... 14

I.      STANDARD OF REVIEW.................................................................. 14

II.     MAHONE CANNOT ESTABLISH RACIAL HARASSMENT ......................... 15

      1.    Mahone Cannot Establish that He Was Subjected to a Hostile Work Environment. ............................................................................... 15

      2.    Mahone Cannot Show that the Alleged Harassment was Race Based....... 19

      3.    Mahone Cannot Establish that the Mayo Meeting was Either Severe or Pervasive. ............................................................................... 22

III.    CSXT IS NOT LIABLE FOR THE ALLEGEDLY HARASSING BEHAVIOR ...................................................................................... 25

CONCLUSION ......................................................................................... 29

CERTIFICATE OF COMPLIANCE WITH 11TH CIR. R. 28-1(m) .............................. 30

## TABLE OF AUTHORITIES

**Page**

<small>CASES</small>

Alexander v. Opelika City Schools,
  352 F. App'x 390 (11th Cir. 2009) ............................................................. 17

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) .................................................................................. 14

Baldwin v. Blue Cross/Blue Shield,
  480 F.3d 1287 (11th Cir. 2007) ................................................................ 28

Bonanni Ship Supply, Inc. v. United States,
  959 F.2d 1558 (11th Cir.1992) ................................................................. 15

Bryant v. Jones,
  575 F.3d 1281 (11th Cir. 2009) ................................................................ 12

Burlington Indus. v. Ellerth,
  524 U.S. 742 (1998) .................................................................................. 25

Celotex Corp. v. Catrett,
  477 U.S. 317, 106 S.Ct. 2548 (1986) ....................................................... 14

Chapman v. Al Transport,
  229 F.3d 102, 1023 (11th Cir. 2000) ........................................................ 14

Cotton v. Cracker Barrel Old Country Store, Inc.,
  434 F.3d 1227, 1234 (11th Cir. 2006) ...................................................... 16

Clark v. S. Broward Hosp. Dist.,
  601 Fed. Appx. 886 (11th Cir. 2015) ........................................... 16, 19, 21

Dominguez-Curry v. Nevada Trans. Dept.,
  424 F.3d 1027 (9th Cir. 2005) .................................................................. 24

Edwards v. Wallace Comm. College,
  49 F.3d 1517 (11th Cir. 1995) .................................................................. 18

EEOC v. Beverage Canners, Inc.,
   897 F.2d 1067, 1068 (11th Cir. 1990) ........................................................ 18

Ellis v. England,
   432 F.3d 1321, 1326-27 (11th Cir. 2005) .................................................. 14

Faragher v. City of Boca Raton,
   524 U.S. 775 (1998) ...................................................................................... 25

Fortson v. Carlson,
   No. 14- 13527, 2015 U.S. App. LEXIS 12267 (11th Cir. 2015) ................ 12

Freeman v. City of Riverdale,
   330 F. App'x 863 (11th Cir. 2009) ...................................................... 15, 18

Gupta v. Florida Bd. Of Regents,
   212 F.3d 571, 586 (11th Cir. 2000) ............................................................ 18

Hall v. Dekalb Co. Gov't,
   503 F. App'x 781 (11th Cir. 2013) ............................................................. 14

Hamilton v. Southland Christian Sch., Inc.,
   680 F.3d 1316, 1318 (11th Cir. 2012) ........................................................ 11

Harris v. Forklift Sys.,
   510 U.S. 17 (1993) ......................................................................................... 18

Jaffke v. Dunham,
   352 U.S. 280, 281 (1957) .............................................................................. 15

Kilgore v. Thompson & Brock Mgmt., Inc.,
   93 F.3d 752 (11th Cir. 1996) ....................................................................... 28

Lawrence v. Wal-Mart Stores,
   236 F. Supp. 2d 1314 (M.D. Fla. 2002) ..................................................... 22

Lucas v. W. W. Grainger, Inc.,
   257 F.3d 1249 (11th Cir. 2001) ................................................................... 15

Marks v. U.S. Security Associates, Inc.,
   2:08-cv-00459-KOB, Doc. 133 at 18 (N.D. Ala. 2009) ............................ 24

McCann v. Tillman,
  526 F.3d 1370 (11th Cir. 2008), cert denied, 129 S.Ct. 404 (2008) ...................... 17, 23

McCollum v. Bolger, 794 F.2d 602, 610
  (11th Cir. 1986) ...................................................................................... 16, 20

Mendozo v. Borden, Inc.,
  196 F.3d 1238 (11th Cir. 1999) ................................................................. 15

Meritor Savings Bank, FSB v. Vinson,
  477 U.S. 57 (1986) .................................................................................. 18

Miller v. Kenworth of Dothan, Inc.,
  277 F. 3d 1269 (11th Cir. 2002) .................................................... 15, 22, 25

Moore v. Kuka Welding Systems & Robot Corp.,
  171 F.3d 1073 (6th Cir. 1998) ............................................................ 23, 24

Oncale v. Sundowner Offshore Serv., Inc.,
  523 U.S. 75 (1998) .................................................................................. 16

Sandefur v. FedEx Ground Package Sys., Inc.,
  Civil Action No. CV-11-S-306-NE., 2013 BL 38750 *15-16 (N.D. Ala.
  2013) ...................................................................................................... 17

Sapuppo v. Allstate Floridian Ins. Co.,
  739 F.3d 678 (11th Cir. 2014) ................................................................. 11

Steele v. Offshore Shipbuilding, Inc.,
  867 F.2d 1311 (11th Cir. 1989) ............................................................... 28

Vore v. Indiana Bell Tel. Co., Inc.,
  32 F.3d 1161, 1162 (7th Cir. 1994) .......................................................... 16

Wills v. Postmaster Gen.,
  300 Fed. Appx. 748 (11th Cir. 2008) ........................................................ 16

STATUTES

28 U.S.C. § 1291 ...................................................................................... 1

**OTHER AUTHORITIES**

Fed. R. App. 32(a)(5)............................................................................... 30

Fed. R. App. 32(a)(6)............................................................................... 30

Fed. R. App. 32(a)(7)(B) ........................................................................ 30

Fed. R. Civ. P. 56(a) ............................................................................... 14

Rule 56 of the Federal Rules of Civil Procedure................................... 14

## STATEMENT OF JURISDICTION

The District Court granted CSXT's motion for summary judgment on

May 29, 2015.  Mahone filed his Notice of Appeal on June 25, 2015.  Therefore,

this Court has appellate jurisdiction pursuant to 28 U.S.C. §1291.

## STATEMENT OF THE ISSUE

Whether the decision of the District Court granting summary judgment in favor of CSXT should be affirmed because:  (i) Mahone failed to present evidence to establish a *prima facie* case of race harassment; and (ii) even if Mahone could establish a *prima facie* case, CSXT demonstrated that it effectively responded to any complaint of alleged harassment by Mahone such that all allegedly harassing conduct stopped.

## STATEMENT OF THE CASE

### A.    PROCEDURAL HISTORY

On or about April 12, 2013, Plaintiff – Appellant Cornelius Mahone ("Appellant" or "Mahone"), an African-American, filed a charge with the EEOC claiming that he experienced racial harassment at CSXT and that CSXT discriminated and retaliated against him by terminating him for violating CSXT Operating Rules.  Mahone Dep. 299; EEOC Charge.  The EEOC issued a notice of right to sue on or about November 27, 2013, stating that it was unable to conclude that CSXT violated Title VII. Id.

On February 25, 2014, Mahone filed a complaint in the U.S. District Court for the Northern District of Alabama alleging that he was subjected to racial harassment while a CSXT employee and that CSXT discriminated and retaliated against him by terminating his employment for violation of CSXT Operating Rules. Complaint at 5-8, Appendix, Tab 3.  In May 29, 2015, the District Court granted CSXT's Motion for Summary Judgment and dismissed all of Mahone's claims.  Mahone filed a Notice of Appeal on June 25, 2015.

### B.    STATEMENT OF THE FACTS

CSXT is a railroad company operating in the Eastern United States and Canada that employs approximately 30,000 employees, most of whom – like Mahone – are unionized and governed by a collective bargaining agreement

("CBA") and the federal Railway Labor Act.  Declaration of Jermaine Swafford

("Swafford Dec.") ¶ 4.  CSXT hired Mahone as a Conductor on or about

September 19, 2006.  Swafford Dec. ¶ 20.

1. **CSXT's Policy Statement on Equal Employment Opportunity and CSXT's Code of Ethics**

CSXT does not tolerate discrimination or harassment and ensures that its

policies against discrimination are widely and periodically disseminated and

reinforced through continuing training programs.  Declaration of Linda Mundy

("Mundy Dec.")  ¶ 3.

CSXT's Policy Statement on Equal Employment Opportunity prohibits

discrimination or making any personnel action based on race.  Mundy Dec. ¶ 4.

Similarly, CSXT's Anti-Harassment Policy "prohibits any employee or supervisor

from harassing another employee through racial or ethnic slurs or subjecting an

employee to any verbal, visual, or physical abuse relating to a person's race [or]

color."  Mundy Dec. ¶ 5.  CSXT's policies also prohibit retaliation against anyone

for raising a concern or reporting possible misconduct.  Deposition of Cornelius

Mahone ("Mahone Dep.") 63-64; Mundy Dec. ¶ 6-7.  Any employee who violates

these policies is subject to discipline, up to and including termination.  Id.

Employees are required to report immediately any violation of the policies to their

Human Resources Manager or the CSXT Ethics Information Toll Free Hotline

("Ethics Hotline") so that CSXT can investigate each complaint and take corrective and remedial measures, if necessary.  Mahone Dep. 63-64; Mundy Dec. ¶ 5.

CSXT also maintains a Code of Ethics that expressly prohibits discrimination and harassment on the basis of race.  Mahone Dep. 63-64; Mundy Dec. ¶ 6. The Code of Ethics provides explicit guidance to employees on how to report harassing behavior, stating that employees are "obligated to promptly raise concerns and report suspected violations of laws and regulations, company policies or the Code to [their] supervisor or the CSX Ethics Helpline."  Mundy Dec. ¶ 6. Additionally, the Code of Ethics prohibits retaliation against anyone for raising a concern, reporting possible misconduct, or providing information related to a concern or report.  Mahone Dep. 63-64; Mundy Dec. ¶ 8.

Mahone understood that CSXT had a policy prohibiting racial harassment and discrimination.  Mahone Dep. 63-64.[1]  In addition, Mahone understood that CSXT prohibited retaliation against anyone for raising concerns of discrimination or harassment.  Mahone Dep. 63-64. Mahone also understood that he could make a complaint to CSXT's Ethics Hotline.  Mahone Dep. 210-211, 239-240.

---

[1]    Mahone's training record shows that he received periodic training on these policies. Mundy Dec. ¶ 26-27.

2.    **CSXT's Individual Development & Personal Accountability Policy ("IDPAP")**

CSXT maintains Operating Rules that govern conditions and actions on railroads operated by CSXT.  Swafford Dec. ¶ 3, 5.  All train and engine crewmembers, including Mahone, must obey all CSXT rules and regulations and all applicable federal laws governing railroad employees.  Swafford Dec. ¶ 7.

When Conductors such as Mahone fail to adhere to the Operating Rules, CSXT uses the IDPAP to address and correct those failures.  Swafford Dec. ¶ 9. The IDPAP separates Operating Rule violations into minor, serious and major. Swafford Dec. ¶ 9-15. Major offenses are offenses that "warrant removal from service pending a formal hearing and possible dismissal from service for a single occurrence if proven responsible."  Swafford Dec. ¶ 13.  Major offenses include altercations and other acts that cause harm to other persons.  Individual Development and Personal Accountability Policy ("IDPAP").

3.    **Ethics Hotline Complaint Against Mahone for Workplace Violence**

On or about September 26, 2011 CSXT, through the Ethics Hotline, received a complaint from union employee Christopher Ellis ("Ellis").  Mundy Dec. ¶ 6. Ellis complained that Mahone used his cell phone to threaten Ellis and his family in response to Ellis calling Mahone a "sleepyhead" over the CSXT internal radio. Mundy Dec. ¶ 16-18; Ellis' Ethics Hotline Complaint at 2.  Ellis complained that

6

Mahone stated "you don't know who you're f[*]cking with" and "you don't know what can happen." Mundy Dec. ¶ 17. A co-worker, James Braswell ("Braswell"), who was with Mahone when the "sleepyhead" comment was made, told Ellis that Mahone also said that: 1) he was "going to do something to [Ellis] in Mobile;" 2) he knew where Ellis lived; and 3) he could have one of his "homeboys" "take care" of Ellis for $500. Mundy Dec. ¶ 18; Ellis' Ethics Hotline Complaint at 2-3.

Ellis made a similar complaint to Melvin Murray ("Murray"), Mahone's supervisor, on or about September 22, 2011. Deposition of Melvin Murray ("Murray Dep.") 16. Murray called his immediate supervisor, Brian Barr, who instructed Murray to assess an infraction in CSXT's disciplinary system against Mahone for making statements about a crew member that could reasonably be perceived as threatening workplace violence.[2] Murray Dep. 16-18. CSXT subsequently charged Mahone with a Major violation under the IDPAP and scheduled Mahone for an Investigation Hearing.[3] Ellis' Ethics Hotline Complaint

---

[2]    Murray also assessed an infraction against Ellis for using CSXT's internal radio for unnecessary and irrelevant transmissions. Murray Dec. ¶ 11.

[3]    Murray's assessment did not result in Mahone receiving discipline. Mahone Dep. 229-230. Under CSX's IDPAP, Murray, as the assessing manager who input the alleged infraction into CSXT's disciplinary system, could not participate in the decision process. Murray Dep. 35. Instead, under IDPAP, once an assessment is input and a charge letter issues, an Investigation Hearing is held in which the charged employee has union representation and an opportunity to confront witnesses, present evidence and testify on his behalf. IDPAP at 3; Swafford Dec. ¶ 17. A Hearing Officer is responsible for conducting a fair and impartial hearing.

at 4; IDPAP at 3-4. However, Mark Mayo ("Mayo") who is African American and

the Atlanta Division Manager responsible for determining all discipline in

Mahone's Division, cancelled the Investigation Hearing.[4]  Mahone Dep. 229-230.

Mayo cancelled the Investigation Hearing in an attempt to deal with the

complaint informally and ensure that Mahone would not be at risk of termination.[5]

Mayo Dec. ¶ 6-7; Murray Dep. 23-24.  Instead of conducting the formal

Investigation Hearing, Mayo decided to hold an informal meeting in November

2011 with all the relevant parties in an effort to discuss ways to prevent incidents

like the one Ellis complained about and to ensure that the employees involved

would be able to continue working together (the "Mayo Meeting"). Mahone Dep.

207-208, 221-222, Mayo Dec. ¶ 6-7; Murray Dep. 23-24, 26.  Mayo, Murray,

Mahone, Ellis, Braswell, co-employee Brian Hickman, and two Union

---

Mahone Dep. 145, Swafford Dec. ¶ 17.  Then, the employee's Division Manager reviews the hearing transcript, the Hearing Officer's findings, if any, and determines whether the employee violated CSX's rules and, if so, the appropriate discipline to impose.  Swafford Dep. 13-14.

[4]    Mahone's statement that "[t]he disciplinary assessment was dismissed in Atlanta *where a no cause finding was made that exonerated [Mahone] of any wrongdoing,*" is unsupported by Record Evidence.  Mahone Brief at 10. To the contrary, the testimony cited by Mahone simply shows that Mayo decided to handle the complaint outside of the formal IDPAP process in an effort to avoid Mahone's termination.  Murray Dep. 23;  see also Mayo Dec. ¶ 6-7; Murray Dep. 23-24, 26.

[5]    Contrary to Mahone's unsupported assertion, the purpose of the meeting was clear – to prevent Mahone from facing potential termination over the alleged threat. Order at 8.  Mayo Dec. ¶ 6-7; Murray Dep. 23-24, 26.

representatives, Leebo Graham and Bill Barnett, were all present at the Mayo Meeting.  Mahone Dep. 128-129, Murray Dep. 24-26, 29-30; Mayo Dec. ¶ 8. Mahone surreptitiously recorded the meeting. Mahone Dep. 129-131; ECF No. 35-1, ("Mayo Meeting Audio").

Given the purpose of the meeting, the specific threats that Mahone was accused of making were intended to be, and were in fact, discussed during the Mayo Meeting.  Order at 24; Mayo Dec. ¶ 7-9; Murray Dep. 23-24, 26; Mayo Meeting Audio at 44:45 – 49:03. Neither Ellis nor any of the other employees admitted that they were lying about or otherwise retracted that Mahone had threatened Ellis.[6]  Mayo Meeting Audio at 1:22:57 – 1:22:33, 1:32:10 – 1:32:55. At one point in the Mayo Meeting, Mahone stated that his co-workers' allegations against him were a hate-crime "if [Mahone was] telling the truth.[7]"  Order at 24; Mayo Meeting Audio at 1:33:20 – 1:33:35. However, as Mahone admits, his co-workers did not agree with his version of the facts.  Mahone Dep. 112.

---

[6]     Rather, Hickman reiterated that Mahone had threatened Ellis, but further stated that he could not remember verbatim the words that Mahone used that day: "[w]hat happened that day, I can't really recall what you said, but I do recall you saying 'he don't know who he's messing with.'" Mayo Meeting Audio at 1:32:10 – 1:32:55.

[7]     In response to Mahone's statement, one of the Union Representatives – who are not CSXT managers – stated that "this is not a black and white issue … no way, no way!" Mahone Dep. 129; Mayo Meeting Audio at 1:33:20 – 1:33:55. It is this same Union representative who later in the meeting sought an assurance from Mahone that he would not engage in any of the acts raised by Ellis' complaint. See e.g., Mahone Brief at 20; Mayo Meeting Audio at 1:40:14 – 1:40:42.

During the Mayo Meeting, Mayo attempted to address the concerns of both Mahone and his co-workers.  Mayo stated that Ellis should not have called Mahone a sleepyhead, and without necessarily accepting the allegations against Mahone, Mayo further admonished all of the employees involved that if they could not work together without incident, then they would need to find other employment.  Order at 25-26; Mayo Meeting Audio at 1:36:30. No disciplinary action was taken against Mahone.  Mahone Dep. 229-230.  However, Mayo also informed Mahone, Ellis, Hickman and Braswell that any further complaints of workplace violence, threats, or improper cell phone usage in violation of CSXT Operating Rules and the FRA, would be handled according to the IDPAP Policy.  Mayo Dec. ¶ 11.

No further incidents of alleged race harassment were reported by Mahone, and Mahone admits that he did not experience any allegedly racially harassing conduct after this meeting.  Order at 26; Mahone Dep. 139.

## C.    RULINGS PRESENTED FOR REVIEW

Mahone contends that the District Court, after reviewing the record and applying well-settled case law, incorrectly determined that Mahone failed to establish a race harassment claim against CSXT based on the Mayo Meeting.  To the contrary, the District Court correctly found that Mahone failed to establish a severe and pervasive racially hostile work environment existed at CSXT based on the Mayo Meeting.  Moreover, the District Court further concluded that CSXT

10

promptly addressed Mahone's concerns such that he experienced no further allegedly harassing conduct after the Mayo Meeting.

Mahone admittedly does not challenge any other claims raised before the District Court in CSXT's Motion for Summary Judgment and, as such, has abandoned those claims.  See Mahone Brief at 2; <u>Sapuppo v. Allstate Floridian Ins. Co.</u>, 739 F.3d 678, 680 (11th Cir. 2014) ("[w]hen an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.")(citing <u>Hamilton v. Southland Christian Sch., Inc.</u>, 680 F.3d 1316, 1318 (11th Cir. 2012) (a party abandons an issue "by failing to list or otherwise state it as an issue on appeal")).

## SUMMARY OF ARGUMENT

The District Court correctly determined that Mahone failed to meet his burden of showing that he experienced a severe and pervasive hostile work environment based on race during a single meeting in November 2011 – the Mayo Meeting.  In addition, the District Court also concluded, based on well-established Eleventh Circuit precedent, that CSXT was not liable for any allegedly harassing behavior since Mahone experienced no further such conduct after the Mayo Meeting.

In an effort to salvage his race harassment claim, Mahone distorts the clear and unambiguous facts in the record.  Not only does Mahone frequently fail to cite any supporting evidence for his broad conclusory allegations, but, when Mahone does provide citations to the record, they simply fail to support his assertions. In doing so, Mahone attempts to create a set of facts that would somehow allow a single meeting – which was called for the express purpose of ensuring that Mahone would not be at risk of termination – to meet the severe or pervasive standard required to prevail on a race harassment claim.[8]  Mahone Brief at 21; Mayo Dec. ¶

---

[8]     Mahone raises his race harassment claim under Section 1981 and not Title VII.  See Mahone Brief at 10-11.  Even so, Section 1981 hostile work environment claims have the same elements and analytical format as Title VII claims.  Fortson v. Carlson, No. 14- 13527, 2015 U.S. App. LEXIS 12267 *10 (11th Cir. 2015); Bryant v. Jones, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009)(discrimination claims

8-10; Murray Dep. 23-24. Even so, the single incident of allegedly harassing behavior still falls far short of the Eleventh Circuit's standard.

Moreover, assuming *arguendo* that Mahone could establish that he experienced a hostile work environment as a result of the Mayo Meeting, CSXT undisputedly maintained clear anti-harassment policies which not only prohibit harassment but also provide explicit instructions on reporting allegedly harassing behavior. Mahone Dep. 63-64; Mundy Dec. ¶ 6-7. Even if Mahone is deemed to have made a complaint pursuant to those policies, CSXT took prompt remedial action during the Mayo Meeting after which Mahone admits that no further allegedly harassing conduct occurred.  Order at 26; Mahone Dep. 139; Mayo Meeting Audio at 1:35:28.

Therefore, Mahone cannot establish that he was subjected to a hostile work environment based on race or that CSXT is liable for the allegedly harassing conduct. Simply put, Mahone's racial harassment claim lacks evidentiary support and fails to meet the standard required to prevail in a Title VII claim.

---

under Title VII and 1981 are subject to the same standards of proof and analyzed under the same framework).

## ARGUMENT AND CITATION OF AUTHORITY

## I.    STANDARD OF REVIEW.

The Eleventh Circuit must review the District Court's grant of summary judgment *de novo*, applying the same legal standards that bound the District Court. Hall v. Dekalb Co. Gov't, 503 F. App'x 781, 785 (11th Cir. 2013) (citing Chapman v. Al Transport, 229 F.3d 102, 1023 (11th Cir. 2000)).  Rule 56 of the Federal Rules of Civil Procedure requires that summary judgment be granted when "there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986); Chapman, 229 F.3d at 1023); Fed. R. Civ. P. 56(a).  Any "disagreement between the parties is [in]significant unless the disagreement presents a 'genuine issue of material fact.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  Moreover, "mere conclusions, unsupported factual allegations, and statements that are based on belief . . . are insufficient to overcome a summary judgment motion." Hall, 503 F. App'x 786 (citing Ellis v. England, 432 F.3d 1321, 1326-27 (11th Cir. 2005)).  Summary judgment must be entered when a party fails to make a showing sufficient to "prove an element essential to its case on which it bears the ultimate burden of proof."  Celotex, 477 U.S. at 322-23).  As discussed below, Mahone cannot establish the elements essential to his claim.

This Court may also affirm the District Court's dismissal under the "right for any reason" rule. As such, this Court "may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court*.*" Bonanni Ship Supply, Inc. v. United States, 959 F.2d 1558, 1561 (11th Cir.1992); see also Lucas v. W. W. Grainger, Inc., 257 F.3d 1249, 1256 (11th Cir. 2001) (quoting Jaffke v. Dunham, 352 U.S. 280, 281 (1957)).

## II.    MAHONE CANNOT ESTABLISH RACIAL HARASSMENT

### 1.    Mahone Cannot Establish that He Was Subjected to a Hostile Work Environment.

Mahone cannot demonstrate that he experienced a hostile work environment based on race. To do so, Mahone must show not only that he is a member of a protected class, but also that he was subjected to unwelcome harassment, based on his race, that was subjectively and objectively severe enough to alter the terms and conditions of employment so as to create a discriminatorily abusive working environment, and that the employer was responsible for such environment under a theory of vicarious or direct liability. Miller v. Kenworth of Dothan, Inc., 277 F. 3d 1269, 1275 (11th Cir. 2002). See also Mendozo v. Borden, Inc., 196 F.3d 1238, 1245 (11th Cir. 1999); Freeman v. City of Riverdale, 330 F. App'x 863, 865 (11th Cir. 2009).

15

Neither Title VII nor Section 1981 is a federal "civility code." <u>Oncale v. Sundowner Offshore Serv., Inc.</u>, 523 U.S. 75 (1998)).  Therefore, "not all objectionable language and conduct will support a Title VII harassment claim." <u>Clark v. S. Broward Hosp. Dist.</u>, 601 Fed. Appx. 886, 900 (11th Cir. 2015) (citing <u>Cotton v. Cracker Barrel Old Country Store, Inc.</u>, 434 F.3d 1227, 1234 (11th Cir. 2006) (internal quotations omitted)). "[P]ersonal animosity is not the type of harassment prohibited by Title VII, and a plaintiff cannot turn a 'personal feud' into a Title VII claim." <u>Clark</u>, 601 Fed. Appx. at 900 (the plaintiff failed to establish Title VII harassment because "[a]t most, the incidents Plaintiff alleges demonstrate that her difficulties with co-workers resulted from serious and ongoing interpersonal conflicts between Plaintiff and her co-workers," rather than the incidents being motivated by her gender) (citing <u>McCollum v. Bolger</u>, 794 F.2d 602, 610 (11th Cir. 1986) (personal dislike is not discrimination and is not proscribed by Title VII) and <u>Vore v. Indiana Bell Tel. Co., Inc.</u>, 32 F.3d 1161, 1162 (7th Cir. 1994) ("[P]ersonality conflicts between employees are not the business of the federal courts.")). As such, Mahone must tie incidents of alleged harassment to race. <u>See</u> <u>e.g.</u>  <u>Wills v. Postmaster Gen.</u>, 300 Fed. Appx. 748, 751 (11th Cir. 2008) (employee did not show that the allegedly hostile conduct by his supervisor "was tied to his race").

Absent sufficiently severe and repeated racially charged conduct, the Eleventh Circuit will not find a racially hostile work environment.  For example, in McCann v. Tillman, 526 F.3d 1370, 1379 (11th Cir. 2008), cert denied, 129 S.Ct. 404 (2008), the Eleventh Circuit rejected an employee's claim of racial harassment despite the employee's allegations that two coworkers used the words "girl," "boys" and "N[-word] bitch" to refer to the employee and other African American colleagues.  The Court concluded that, "[a]lthough offensive, such instances of racially derogatory language alone, extending over a period of more than two years, [were] too sporadic and isolated to establish that her employers' conduct was [] objectively severe and pervasive[.]"  Id.; see also Alexander v. Opelika City Schools, 352 F. App'x 390, 393 (11th Cir. 2009) (affirming summary judgment to employer where employee only recalled eight instances of racially derogatory conduct over the course of two years and none involved threats of physical violence); Sandefur v. FedEx Ground Package Sys., Inc., Civil Action No. CV-11-S-306-NE., 2013 BL 38750 *15-16 (N.D. Ala. 2013) (ten instances of racial references to President Obama and other African Americans over the course of two years failed to establish a racially hostile work environment).

In evaluating the objective severity of the harassment, the Court must look at the totality of the circumstances and consider: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or

humiliating; and (4) whether the conduct unreasonably interferes with the employee's job performance.  Freeman, 330 F. App'x at 865.  "Mere utterance of a racial epithet that engenders offensive feelings in an employee but does not alter the conditions of employment does not present an actionable situation."  Harris v. Forklift Sys., 510 U.S. 17, 21 (1993) (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986)); Gupta v. Florida Bd. Of Regents, 212 F.3d 571, 586 (11th Cir. 2000).  In other words, racial slurs spoken by coworkers must be "so commonplace, overt and denigrating that they create an atmosphere charged with racial hostility."  Edwards v. Wallace Comm. College, 49 F.3d 1517, 1521 (11th Cir. 1995) (quoting EEOC v. Beverage Canners, Inc., 897 F.2d 1067, 1068 (11th Cir. 1990)).

Applying the exacting standards of the Eleventh Circuit, Mahone's claims fall well short of demonstrating severe or pervasive conduct.  Mahone relies solely on one incident to support his race harassment claim – the meeting organized by Division Manager Mark Mayo in November 2011. [9]  Although the meeting was

---

[9]    Mayo organized the meeting to ensure that Mahone would not be at risk of termination after CSXT received a complaint that Mahone threatened his co-worker and used his cell phone in violation of both CSXT Operating Rules and the FRA. Mayo Dec. ¶ 6-9; Murray Dep. 23-24, 26, Mayo Meeting Audio at 55:09 – 56:35, 1:09:30.  Contrary to Mahone's claims, he was not the only employee in the meeting ever faced with potential discipline. Mahone Brief at 16; Murray Dec. ¶ 9-10. Not only was Ellis initially assessed with an infraction, but everyone involved in the incident who had used a cell phone while on a train faced potential discipline

called in order to address the allegations raised in the Ellis complaint (and the

method by which the threats were made),[10] Mahone apparently contends that any

repetition by Ellis of the threats he understood Mahone to make – including

Mahone's use of the term "homeboys" – was racial harassment.  Mahone Brief at

6.  In doing so, Plaintiff not only ignores the context in which the word

"homeboys" was used, but also that the term was used in an isolated and non-

recurring manner.

> **2.     Mahone Cannot Show that the Alleged Harassment
> was Race Based.**

Mahone's complaint regarding the Mayo Meeting fails to establish a hostile

work environment claim because Mahone has not presented any evidence of racial

animus. Clark, 601 Fed. Appx. at 900 (the plaintiff failed to establish Title VII

harassment because "[a]t most, the incidents Plaintiff alleges demonstrate that her

difficulties with co-workers resulted from serious and ongoing interpersonal

---

had the matter not been handled informally. Murray Dec. ¶ 9-10; Mayo Meeting
Audio at 1:19 – 1:20. Mayo alone made the decision to cancel both Mahone's and
Ellis' assessments and to conduct the Mayo Meeting in lieu of any investigation
hearings.  Mayo Dec. ¶ 7-8; Mayo Meeting Audio at 1:09:30. In doing so, he did
not exonerate any employee or conclude that the incident did not occur.  Mayo
Meeting Audio at 1:09:30.

[10]     Mahone admits that he used his cell phone to respond to his co-worker, after
his co-worker jokingly referred to Mahone as "sleepyhead" over CSXT's internal
radio. Mahone Dep. 109, 263. Despite Mahone's belief to the contrary, his use of a
cell phone during active duty is a violation of both CSXT Operating Rules and the
FRA. Mayo Meeting Audio at 55:09 – 56:35.

conflicts between Plaintiff and her co-workers," rather than the incidents being

motivated by a protected characteristic) (citing <u>McCollum</u>, 794 F.2d at 610

(personal dislike is not discrimination and is not proscribed by Title VII)).

Although Mahone now attempts to argue that the term "homeboys" was used in a

racially derogatory manner, Mahone admitted in his deposition both that none of

his co-workers in the Mayo Meeting ever directed a racially derogatory term[11]

towards him. Employee Brief at 12, 14-15; Mahone Dep. 139-141.

Despite Mahone's attempts to base his claim of race harassment on the use

of the term "homeboys," Mahone's co-workers were simply discussing the

allegations raised in Ellis' complaint to the CSXT Ethics Hotline.  Mahone Dep.

207-208, 221-222, Mayo Dec. ¶ 8-9; Murray Dep. 23-24, 26. Thus, and as the

District Court concluded, "there is a difference between being called offensive

---

[11]    Mahone spends three pages of his Brief in an effort to create a scenario
where Mahone's co-workers' statements during the Mayo Meeting are race-based.
Mahone Brief at 8-10.  Not only does Mahone provide no record evidence to
support his suppositions, but they are contrary to the actual evidence in the record.
For example, Mahone incorrectly states that he received a "warning or discipline"
based on Ellis' complaint, when, in fact, Mahone never received any discipline.
Mahone Brief at 9; Mahone Dep. 229-230. In addition, at no point in Mahone's
recording of the Mayo Meeting does Hickman state that he "added the word 'f---
ing,'" because of Mahone's race.  Mahone Brief at 9.  Instead, during the Mayo
Meeting, Hickman said that he could not recall verbatim what Mahone said that
day, but that he did remember Mahone said that Ellis "don't know who he's
messing with." Mayo Meeting Audio at 1:33:20 – 1:33:55. At no point during the
Mayo Meeting, do Hickman, Ellis and Braswell ever waver from their previous
statements that Mahone had made threats against Ellis. See id. at Mayo Meeting
Audio at 1:22:57 – 1:22:33, 1:32:10 – 1:32:55.

words . . . and being accused of directing purportedly offensive language at a

victim." Order at 25. Moreover, as the District Court noted:

> To hold under these facts that the co-workers' accusation against Mahone
> created a hostile work environment would mean that victims of harassment
> can face accusations of alleged harassment solely because the victims
> repeated in their complaint the alleged harassing language purportedly
> directed at them  Such a result would have a chilling impact in the
> workplace, would likely discourage employees from utilizing complaint
> procedures to report alleged harassment, and would frustrate employers'
> efforts to rid the workplace of offensive and discriminatory conduct.

Id. As a result, Mahone failed to present any offensive race-based conduct.

In addition to the District Court's holding, the record establishes that

Mahone did not get along with Murray, Ellis, or his other co-workers involved in

the Mayo Meeting. Mahone Dep. 228, 263. Although Mahone asserts that his co-

workers conspired to submit a false complaint against him, he presents no evidence

that such a complaint was somehow racially motivated. Mahone Dep. 176-177,

298. At most, Mahone has established that the conflict between himself and his

co-workers was one of personal and general dislike. See e.g. Clark, 601 Fed.

Appx. at 900 (the plaintiff failed to establish Title VII harassment because "[a]t

most, the incidents Plaintiff alleges demonstrate that her difficulties with co-

workers resulted from serious and ongoing interpersonal conflicts between Plaintiff

and her co-workers," rather than the incidents being motivated by her gender)

(citing McCollum, 794 F.2d at 610 (personal dislike is not discrimination and is

not proscribed by Title VII)). Without more, Mahone cannot connect his complaints regarding the Mayo Meeting to race.

### 3.    Mahone Cannot Establish that the Mayo Meeting was Either Severe or Pervasive.

Even if Mahone could show that the incident was somehow race-based, the statements that Mahone alleges were made in the Mayo Meeting fail to rise to the level of either severe or pervasive as required by the Eleventh Circuit.  First, neither CSXT management nor Mahone's co-workers directed the term "homeboys" at Mahone, but instead and as described above, merely referenced statements about which Ellis had reported to the CSXT Ethics Hotline. Mundy Dec. ¶ 17. As such, this is not a situation where a co-worker used a racial epithet to refer to the complaining employee or used racial epithets to berate, taunt or intimidate the complaining employee. See Miller v. Kenworth of Dothan Inc., 277 F.3d 1269, 1277 (11th Cir. 2002) (racially derogatory names were shouted at the plaintiff, who was also taunted in an intimidating manner with racially derogatory terms); see also Lawrence v. Wal-Mart Stores, 236 F. Supp. 2d 1314, 1319, 1325 (M.D. Fla. 2002) (calling the employee "homeboy" and "boy" twice, and "brother" on a daily basis was neither severe nor pervasive because a reasonable person could not consider use of such terms as intimidating or berating).

Moreover, this Court has concluded that, even in instances where racial epithets are directed at an employee, that employee cannot establish a hostile work

environment claim when the conduct was "sporadic" or "isolated." See McCann, 526 F.3d at 1379. Here, the isolated use of the term "homeboys" during the Mayo Meeting was insufficient to establish "severe or pervasive conduct." Id.; Mahone Brief at 13.

In an attempt to overcome the clear Eleventh Circuit standard, Mahone asserts that a "single episode can be harassment" if it is "hostile enough." Mahone Brief at 14. To show that the alleged conduct here is "hostile enough," Mahone points to two separate bases: (i) Mahone's co-workers falsely accused him of threatening Ellis, using the word "homeboys;" and (ii) Mahone's managers were present during the Mayo meeting at which Ellis' complaint about Mahone was discussed. Mahone Brief. at 20.

Mahone references Moore v. Kuka Welding Systems & Robot Corp., 171 F.3d 1073 (6th Cir. 1998) to support his argument that he can establish severe and pervasive conduct on: (i) his co-workers' alleged false accusations;[12] and (ii) his managers' inaction demonstrated adoption of offending conduct. Mahone Brief. 20-24. Moore, however, does not support Mahone's argument. First, Moore simply does not discuss false accusations as constituting severe or pervasive conduct. In addition, in Moore, the Sixth Circuit concluded that a hostile work

---

[12]    Although Mahone repeatedly claims that the accusations against him were false, he nevertheless admits that he understood that his co-workers believed – that Mahone had made the threatening comments towards Ellis. Mahone Dep. 133-134.

environment existed where the employee was subjected to racial slurs and offensive jokes on a daily basis, including the use of the n-word as well as racial comments by a supervisor.  Id. at 1079.  Simply put, Moore does not stand for the proposition that "[t]he use of the n-word by or in the presence of a supervisor has been deemed severe enough to permanently alter the working conditions of the employee."  Mahone Brief at 13-14. Moreover, Mahone does not and cannot point to any evidence that any CSXT supervisor made any type of racially derogatory comments.[13]

Mahone's reliance on Dominguez-Curry v. Nevada Trans. Dept., 424 F.3d 1027, (9th Cir. 2005) and Marks v. U.S. Security Associates, Inc., 2:08-cv-00459-KOB, Doc. 133 at 18 (N.D. Ala. 2009), is equally misplaced.  Unlike Mahone's case, in both Dominguez-Curry and Marks, the individuals charged with engaging in harassing conduct were managers in the company.  Here, however, it is undisputed that neither Murray nor Mayo – the two CSXT managers present during the Mayo Meeting – made any allegedly harassing comments.  Mahone Brief at 14; Mahone Dep. 129.

Finally, and contrary to Mahone's claims, the record clearly establishes that CSXT did not fail to act.  Rather, Mayo admonished the employees that if they

---

[13]     Although Mahone contends that Barnett used the term "homeboys," during the meeting, Barnett is a Union Representative and not a CSXT manager. Employee Brief at 18; Mahone Dep. 129.

could not work together they would be forced to find employment elsewhere. <u>See</u> <u>infra</u> at 27-28.  In fact, Mahone experienced no further conduct that he considered to be race harassment after the Mayo Meeting.  Order at 25; Mahone Dep. 139.

Based on the above, and as the District Court concluded, Mahone cannot show that was subject to a hostile work environment.

## III.    CSXT IS NOT LIABLE FOR THE ALLEGEDLY HARASSING BEHAVIOR

Assuming *arguendo* that Mahone could show that he was subjected to a severe and pervasive hostile work environment, Mahone must also show that CSXT is either directly or vicariously liable for the abusive environment, which he cannot do.[14]  <u>Miller</u>, 277 F.3d at 1275.

CSXT is not subject to vicarious liability because the allegedly racially harassing environment was created by Mahone's co-workers – and not his supervisor.  An employer is only subject to vicarious liability to an employee "for an actionable hostile environment <u>created by</u> a supervisor." <u>Burlington Indus. v. Ellerth</u>, 524 U.S. 742, 765 (1998) (emphasis added) (adopted by <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807 (1998)).  Here, it is undisputed that no CSXT

---

[14]     Mahone must establish that CSXT knew or should have known about the harassment in question and that CSXT failed to take prompt remedial action. <u>Grant</u>, 2013 BL 26012 *13 (citing <u>Little v. United Technologies, Carrier Transicold Division</u>, 103 F.3d 956, 959 (11th Cir. 1997); <u>Splunge v. Shoney's Inc.</u>, 97 F.3d 488, 490 (11th Cir. 1996)).

manager engaged in any form of race based conduct towards Mahone. Mahone

Dep. 112, 139-141, 188-190.

Unlike vicarious liability, direct liability can be established based on an

actions by an employee's co-workers.  However, and contrary to Mahone's claims,

CSXT is entitled to the protection of the <u>Faragher-Ellerth</u> defense against

Mahone's claims of direct liability. The United States Supreme Court has

expressly stated that, when no tangible employment action is taken, as was the case

here, an employer is not liable where "the employer exercised reasonable care to

prevent and correct promptly any [racially] harassing behavior." <u>Id</u>.

CSXT maintains clear anti-harassment policies – a fact which Mahone does

not dispute. Mahone Brief at 11.  Although CSXT disputes that Mahone

complained about any allegedly harassing behavior during the Mayo Meeting, to

the extent Mahone claims that his statements during that meeting somehow

constituted a complaint of racial harassment, CSXT's actions during that meeting

provided a prompt and effective response to any such complaints.  As the District

Court ruled:

> Based on the audio recording Mahone created, it is clear that Mayo
> addressed the concerns, including Mahone's contention of a "hate crime," by
> among other things, reassuring Mahone that Ellis should not have called
> Mahone a sleepyhead," doc. 35-1 at 1:35:28, indicating that he did not
> necessarily accept the allegations against Mahone, <u>id</u>. at 1:36:00, and
> asserting that if Mahone and his co-workers could not work together without
> making accusations against each other, the "[CSXT] ain't the place for you
> to be . . . period. <u>Id.</u> at 1:36:30"

Order at 26.  Moreover, CSXT's response proved effective in that Mahone did not

raise – and does not allege – that any similar conduct occurred after the meeting.

Id.; Mahone Dep. 139.

Mahone raised his only potential complaint of race harassment with CSXT

in the Mayo Meeting.  During the meeting, which was called at the express

direction of the Division Manager to ensure that Mahone was not subject to

disciplinary action and to discuss the allegations made against him by Ellis,

Mahone complained that "if [he was] telling the truth," his co-workers had

conspired in an effort to fabricate a complaint against him, which he believed

amounted to a hate crime. Mayo Meeting Audio at 1:32:10 – 1:32:55. Mahone

provides no objective basis for this belief.  In fact, even his own Union

Representative strongly disagreed with him and promptly advised Mahone that

"this is not a black and white issue … no way…now way!"  Mayo Meeting Audio

at 1:32:10 – 1:32:55

Moreover, and contrary to Mahone's assertions,[15] the Division Manager took

effective steps to prevent any racial harassment against Mahone.  Mayo, without

making a determination regarding the veracity of the allegations, addressed

Mahone's concerns and expressly admonished those involved that if they were not

---

[15]    Mahone claims that CSXT "by their inaction demonstrated negligence,"
during the Mayo Meeting. Mahone Brief at 24.

able to work with each other without incident, they would need to find new employment. Order at 26; Mayo Meeting Audio at 1:35:28. Notably, Mayo's response proved effective because Mahone does not allege anywhere in the record the recurrence of any similar type of conduct by his co-workers. Mahone Dep. 139; Order at 26.

Although Mahone apparently disagrees with the steps which Mayo took to address any concerns Mahone raised, including that CSXT did not formally discipline his co-workers, Mahone's disagreement does not render CSXT's actions as either ineffective or actionable. Mahone Brief at 4. An "employer need not take all possible methods to remedy the harassment once it is put on notice, rather the remedial action must be reasonably likely to prevent the misconduct from recurring." Kilgore v. Thompson & Brock Mgmt., Inc., 93 F.3d 752, 754 (11th Cir. 1996); see also Baldwin v. Blue Cross/Blue Shield, 480 F.3d 1287, 1305-1306 (11th Cir. 2007) (employer was not liable when the alleged harassment ended after the employer took remedial measures); Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1316 (11th Cir. 1989) (same). Given that Mahone experienced no further allegedly harassing conduct after the Mayo Meeting, CSXT's response effectively stopped any such conduct. Thus, CSXT's prompt remedial action precludes Mahone's claim for racial harassment.

## CONCLUSION

In sum, not only has Mahone failed to establish that he was racially harassed, but Mahone cannot demonstrate that CSXT is liable for any of the allegedly harassing behavior.  As such, the Order of the District Court granting CSXT summary judgment on Mahone's claim of racial harassment should be affirmed.

Respectfully submitted,

November 12, 2015

*/s/ Elaine Rogers Walsh*
Deborah A. Sudbury
  (Georgia Bar No. 000090)
Elaine Rogers Walsh
  (Georgia Bar No. 003480)
Uchenna Ekuma-Nkama
  (Georgia Bar No. 957861)
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-3053
Telephone: (404) 581-3939
Facsimile: (404) 581-8330
dsudbury@jonesday.com
erogerswalsh@jonesday.com
uekumankama@jonesday.com

## CERTIFICATE OF COMPLIANCE WITH 11TH CIR. R. 28-1(m)

This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because this brief contains 5332 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4, as counted by Microsoft Word 2007.

This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in proportionally spaced typeface in 14-point Times New Roman font.

*/s/ Elaine Rogers Walsh*
Elaine Rogers Walsh

Attorney for Appellee CSX
Transportation, Inc.

30